# Exhibit A

Electronically FILED by
Superior Court of California,
County of Los Angeles
12/09/2024 4:59 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk

Stephen L. Joseph, Esq. (SBN 189234)
LAW OFFICES OF STEPHEN L. JOSEPH
11693 San Vicente Blvd. # 150
Los Angeles, CA 90049
Telephone: (310) 266-6662
E-mail: slj@sljosephlaw.com

Counsel for Plaintiff
PLASTIKON INDUSTRIES

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| PLASTIKON INDUSTRIES, a California corporation,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>PHILIP MORRIS INTERNATIONAL INC., a Virginia corporation; and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No. 24STCV32436<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

---

1
COMPLAINT

Plaintiff PLASTIKON INDUSTRIES alleges as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff PLASTIKON INDUSTRIES ("Plaintiff") is a California corporation in good standing. It is a manufacturer of molded plastic components and products. Its headquarters and factory are in California.

2. Defendant PHILIP MORRIS INTERNATIONAL INC. ("Defendant") is a Virginia corporation.

3. By the acts and omissions alleged herein, Defendant committed negligence, fraud and interference with contract relations against Plaintiff in California.

4. Defendant knowingly, negligently, and fraudulently caused and induced Plaintiff to enter into a General Business Agreement (the "GBA") with Flextronics International Management Services Ltd. in California. Under the GBA and purchase orders issued pursuant thereto, Plaintiff agreed to manufacture components for Defendant's IQOS heat-not-burn tobacco products at Plaintiff's factory located in California.

5. Defendant knowingly, negligently and fraudulently caused and induced Plaintiff to continue performing the GBA in California while Defendant was secretly working to terminate it.

6. Defendant wrongfully and intentionally caused the GBA to be terminated, which is the subject of this action.

7. The termination of the GBA caused Plaintiff to incur unrecovered costs and lost profits at Plaintiff's headquarters and factory in California and fire numerous employees at that factory in California. Defendant at all relevant times knew that this result would occur.

8. For the foregoing reasons, this Court has personal jurisdiction over Defendant pursuant to pursuant to Code Civ. Proc., § 410.10.

9. Pursuant to Code. Civ. Proc., § 395(a), this Court has venue as none of the Defendants reside in California and therefore they may be tried in the superior court in any county that Plaintiff may designate in its Complaint.

10. The amount in dispute is more than $35,000, exclusive of attorneys' fees, interest,

and costs.

11. Plaintiff is ignorant of the true names and capacities of DOES 1-20, inclusive, and therefore sues them by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when known. Upon information and belief, they were, and continue to be, responsible and liable for the wrongful acts and omissions alleged herein.

12. Upon information and belief, at all times relevant to the allegations herein, Defendant and DOES 1-10, inclusive, were the agents and partners of each other, and were at all times acting within the purpose and scope of their agency and partnership and in agreement and conspiracy with each other.

## STATEMENT OF FACTS

13. On or about September 29, 2021, the U.S. International Trade Commission (ITC) ruled that Defendant must stop importing its IQOS heat-not-burn tobacco products into the United States. The ruling was based on a finding that the IQOS products infringed on patents held by British American Tobacco ("BAT").

14. Until that time IQOS products had been made in China or elsewhere in Asia and imported into the United States.

15. In order to avoid the import ban, Defendant needed to have a manufacturer make the IQOS products in the United States.

16. After the ITC ruling in late 2021 or early 2022, in order to avoid the import ban, Defendant, or a subsidiary or affiliate of Defendant acting on Defendant's behalf and in accordance with Defendant's instructions, entered into a contract with Flex, Ltd., Flextronics International Management Services Ltd., and/or Flextronics America, LLC, and/or another Flex, Ltd. subsidiary or affiliate to manufacture the IQOS products in the United States. The entity that contracted with Defendant is hereinafter referred to as "Flex." Defendant named the program under which it would be manufactured in the United States the Volcano program.

17. In May 2022, Flextronics International Management Services Ltd. entered into a General Business Agreement with Plaintiff (the "GBA"). Plaintiff signed it on May 9, 2022. Flextronics International Management Services Ltd. signed it on May 29, 2022. The GBA stated

1   that it had an effective date of December 3, 2021.

2         18.    Pursuant to the GBA, Plaintiff agreed to manufacture a plastic molded cradle and cigarette holder that were components of the IQOS products that Flex was responsible for supplying to Defendant as part of the Volcano program.

      19.    Defendant knew that a Flex entity was going to enter into, and did enter into, a contract with a subcontractor to manufacture the plastic molded cradle and cigarette holder. Plaintiff does not know whether Defendant knew that the identity of the subcontractor was Plaintiff, but it makes no difference to the causes of action herein whether it did or not.

      20.    On or about February 2, 2024, Defendant publicly announced that it had settled the patent dispute with BAT. This meant that the import ban would be removed.

      21.    Plaintiff does not know when settlement discussions and negotiations between PMI and BAT commenced. They may have been occurring when the GBA was executed.

      22.    At all relevant times including when Flex and Plaintiff entered into the GBA, Defendant intended to terminate its contract with Flex for convenience if and when the patent dispute with BAT was settled and the import ban removed.

      23.    As far as Defendant was concerned, its contract with Flex and the GBA were always merely a backstop or insurance policy in case the import ban was not removed.

      24.    Defendant's motivation and intention to negotiate an end to the import ban was to terminate its contract with Flex and the GBA and move the manufacturing overseas to China or elsewhere in Asia where costs would be lower and profits for Defendant would be higher.

      25.    Accordingly, on February 7, 2024 Flex notified Plaintiff in writing as follows:

> We regret to inform you that our customer for the 'Volcano' program (the "Program") has notified us that they are terminating the Program for convenience. As a result, all open purchase orders issued by Flex are hereby cancelled effectively immediately. Additionally, and materially important for purposes of this notification letter, you are hereby instructed to
>
> a) immediately stop all of your work and activities associated with the Program;
>
> b) immediately cancel all open purchase orders that you have issued to suppliers or subcontractors (of any tier);

      c)  immediately notify your suppliers and subcontractors (of any tier) to do likewise (e.g., perform items (a)-(b)); and

      d)  return all materials on-hand to your suppliers or subcontractors (to the extent possible).

26. Prior to February 2, 2024, Plaintiff did not know that the GBA had anything to do with a patent dispute, an ITC ruling, and import ban or that there were settlement discussions and negotiations to remove the import ban. Defendant and Flex had said nothing to Plaintiff about these matters. Flex informed Plaintiff on or about February 5, 2024.

27. Flex claims as follows: "Flextronics was not aware of any settlement negotiations in the ITC action, nor did it know that the ITC action was settled until Flextronics received a notice terminating the Volcano contract." Plaintiff does not know whether this is true, but assumes that it is true for the purpose of this Complaint.

28. Plaintiff would not have entered into the GBA if it had known about the patent dispute, ITC ruling, and import ban. Plaintiff would have assumed and believed that the patent dispute could be resolved at any time resulting in the import being removed, leaving Plaintiff with substantial incurred costs and no profits. Plaintiff would not have taken that risk.

29. When it executed the GBA, Plaintiff reasonably and justifiably believed that the GBA would remain in effect for the long term, perhaps a decade or more, and had no reason to believe that it might be suddenly and abruptly terminated if a patent dispute and import ban, which it knew nothing about, was settled.

30. Plaintiff spent millions of dollars of its own money implementing the GBA and invested a huge amount of company resources to ensure its success. Plaintiff would not have done so if it had known about the patent dispute, the ITC ruling, the import ban, and the settlement discussions and negotiations. Plaintiff would have immediately ceased all spending to limit its losses if it would have known.

31. The abrupt termination by Flex occurred before Plaintiff had delivered any commercial product, with the result that Plaintiff was unable to recover all of its costs and made zero profit from the GBA. This was reasonably foreseeable by Defendant given the short time period that the GBA in effect, that is approximately two years. Defendant knew or could

reasonably foresee that it would take at least that long to hire personnel, equip, and gear up to commence commercial production.

32. As a result of the termination of the GBA, Plaintiff was forced to fire numerous employees at its California facility. Defendant moved these jobs to China or elsewhere in Asia so that it could lower its costs of production and increase its profits.

33. As a reasonably foreseeable and proximate result of the foregoing nondisclosures, Plaintiff incurred incur unrecovered costs in the amount of $7,981,103 in costs to implement the GBA and unrecovered lost profits in the amount of at least $10,206,000 (in 2024 dollars).

34. Plaintiff has filed an arbitration claim in California against Flex pursuant to the GBA to recover said costs and lost profits. Defendant and Flex are jointly and severally liable to Plaintiff for said costs and lost profits. Flex is not joined in this action because the GBA contains an arbitration clause.

35. The facts alleged in this Complaint are all the relevant facts known to Plaintiff at this time.

### FIRST CAUSE OF ACTION
### Negligence
### (Against PMI)

36. Plaintiff realleges and incorporates herein every allegation contained above.

37. This case is governed by California law as the damage caused by Defendant's conduct occurred in California.

38. California law regarding negligence liability to a plaintiff that is not in privity with a defendant is governed by the California Supreme Court decision in *Biakanja v. Irving* (1958) 49 Cal.2d 647 ("*Biakanja*"), in which the court ruled as follows:

> The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.

1  (*Id.* at p. 650, see also *Beacon Residential Community Ass'n v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, 574.)

39. The foregoing *Biakanja* factors are nonexhaustive. (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 899.) The following statutory policies are applicable to guide application of the *Biakanja* factors. "No one can take advantage of his own wrong." (Civ. Code, § 3517; *Witt v. Jackson* (1961) 57 Cal.2d 62, 72 [the word "wrong" in Civ. Code, § 3517 includes negligence].) "No one should suffer by the act of another." (Civ. Code, § 3520.)

40. Defendant and Flex failed to disclose to Plaintiff, or ensure that Plaintiff knew, that Defendant intended to terminate its contract with Flex for convenience if and when the patent dispute with BAT was settled and the import ban removed.

41. Defendant failed to disclose to Plaintiff, or ensure that Plaintiff knew, that settlement discussions and negotiations had commenced to resolve the patent dispute and permit Defendant to have the components manufactured outside the United States. According to Flex, Defendant also failed to disclose this information to Flex.

42. The harm to Plaintiff of nondisclosure was reasonably foreseeable and actually foreseen by Defendant, that is Plaintiff's incurred unrecovered costs and lost profits.

43. It was a certainty and Defendant knew that it was a certainty that Plaintiff would suffer losses as a direct and proximate result of nondisclosure.

44. The connection between Defendant's nondisclosure and the injury suffered was close, direct, and proximate.

45. Defendant's conduct was highly immoral. There was no reasonable excuse for it.

46. The policy of preventing future harm is served by finding Defendant liable.

47. In *Biakanja*, the court said that liability is a "matter of policy." (*Biakanja, supra*, 49 Cal.2d at 650.) It would be a gross injustice and inconsistent with the policy of *Biakanja* if Plaintiff is forced to bear the costs that it incurred and the lost profits. Plaintiff would never have entered into the GBA or continued to spend money implementing the GBA if it had known the true facts. Defendant should be required to fully compensate Plaintiff.

48. All of the *Biakanja* factors are satisfied.

49. Based on *Biakanja*, Defendant had a duty of care to ensure that Plaintiff knew, prior to entering into the GBA, that the purpose of the GBA was to avoid an import ban.

50. Defendant breached said duty of care.

51. Based on *Biakanja*, Defendant had a duty of care to ensure that Plaintiff knew, at the time that they were occurring, that settlement discussions and negotiations had commenced and were occurring.

52. Defendant breached said duty of care.

53. Plaintiff was not contributorily negligent in any way.

54. Defendant is liable to Plaintiff for negligence based on *Biakanja*.

55. Said negligence proximately caused Plaintiff to incur unrecovered costs in the amount of $7,981,103 in costs to implement the GBA and unrecovered lost profits in the amount of at least $10,206,000 (in 2024 dollars). Defendant is liable to Plaintiff therefor.

56. Defendant's negligence was willful, wanton, and constituted gross negligence. Defendant knew that nondisclosure would cause Plaintiff to suffer substantial losses if the GBA was prematurely terminated as a result of settlement of the patent dispute and removal of the import ban. Therefore, exemplary damages may be awarded. (*Donnelly v. Southern Pacific Co.* (1941) 18 Cal. 2d 863, 869-870.)

57. Defendant's nondisclosure was also malicious, oppressive, and fraudulent, as those terms are defined by Civ. Code, § 3294(c).

58. The acts of malice, oppression, and fraud were committed by one or more officers, directors, or managing agents of Defendant. Said persons also authorized and ratified the deceitful nondisclosures by its employees. Plaintiff does not yet know the names of the officers, directors, managing agents, or employees.

59. Plaintiff requests exemplary damages pursuant to Civ. Code, § 3294.

### SECOND CAUSE OF ACTION
**Actual fraud**
**(Against PMI)**

60. Plaintiff realleges and incorporates herein every allegation contained above.

61. The suppression of a fact, by one who is bound to disclose it constitutes actual

1  fraud. (Civ. Code, §§ 1709, 1710(3).)

2  62. Defendant, intentionally and with fraudulent intent to deceive Plaintiff and induce Plaintiff to enter into the GBA, failed to disclose to Plaintiff (either directly or through Flex) that Defendant intended to terminate its contract with Flex for convenience if and when the patent dispute with BAT was settled and the import ban removed.

63. Defendant, intentionally and with fraudulent intent to deceive Plaintiff and induce Plaintiff to continue performing in the GBA, failed to disclose to Plaintiff (either directly or through Flex) that settlement discussions and negotiations had commenced to resolve the patent dispute and permit Defendant to have the components manufactured outside the United States.

64. At all relevant times, Defendant knew that if the facts in the two preceding paragraphs were disclosed, Plaintiff would not have entered into the GBA or continued to incur costs and invest resources to implement and perform the GBA.

65. Upon information and belief, Defendant instructed Flex not to disclose said facts to Plaintiff.

66. Based on *Biakanja*, Defendant had a duty of care to ensure that Plaintiff knew, prior to entering into the GBA, that the purpose of the GBA was to avoid an import ban.

67. Defendant breached said duty of care.

68. Based on *Biakanja*, Defendant had a duty of care to ensure that Plaintiff knew at the time that they were occurring that settlement discussions and negotiations had commenced.

69. Defendant breached said duty of care.

70. Plaintiff was thereby deceived and fraudulently induced to enter into the GBA and continue spending money to implement and perform it.

71. Defendant is liable to Plaintiff for actual fraud.

72. Said actual fraud proximately caused Plaintiff to incur unrecovered costs in the amount of $7,981,103 to implement and perform the GBA and unrecovered lost profits in the amount of at least $10,206,000 (in 2024 dollars). Defendant is liable to Plaintiff therefor.

73. Defendant's conduct was malicious, oppressive, and fraudulent, as those terms are defined by Civ. Code, § 3294(c).

74. The acts of malice, oppression, and fraud were committed by one or more officers, directors, or managing agents of Defendant. Said persons also authorized and ratified the deceitful nondisclosures by its employees. Plaintiff does not yet know the names of the officers, directors, managing agents, or employees.

75. Plaintiff requests exemplary damages pursuant to Civ. Code, § 3294.

## THIRD CAUSE OF ACTION
### Constructive fraud
### (Against PMI)

76. Plaintiff realleges and incorporates herein every allegation contained above.

77. Any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him, constitutes constructive fraud. (Civ. Code, § 1573.)

78. Based on *Biakanja*, Defendant had a duty of care to ensure that Plaintiff knew, prior to entering into the GBA, that the purpose of the GBA was to avoid an import ban.

79. Defendant breached said duty of care.

80. Based on *Biakanja*, Defendant had a duty of care to ensure that Plaintiff knew, at the time that they were occurring, that settlement discussions and negotiations had commenced and were ongoing.

81. Defendant breached said duty of care.

82. The duty of case may also arise from other legal bases of which Plaintiff is currently not aware as it has not yet seen any contracts or other documents between Defendant and Flex.

83. Said breaches of the duty to disclose gained an advantage to Defendant and misled Plaintiff to its prejudice in that Defendant secured the execution of the GBA (via Flex) and Plaintiff's expenditures and investment of resources to perform the GBA.

84. Defendant is liable to Plaintiff for constructive fraud.

85. Said constructive fraud proximately caused Plaintiff to incur unrecovered costs in the amount of $7,981,103 to implement the GBA and unrecovered lost profits in the amount of

1  at least $10,206,000 (in 2024 dollars). Defendant is liable to Plaintiff therefor.

2        86.    This cause of action does not waive Plaintiff's contention that Defendant had fraudulent intent.

4        87.    Defendant's conduct was willful, wanton, and constituted gross negligence because Defendant knew that nondisclosure would cause Plaintiff to suffer substantial losses if the GBA was prematurely terminated as a result of settlement of the patent dispute and removal of the import ban. Therefore, exemplary damages may be awarded. (*Donnelly v. Southern Pacific Co.* (1941) 18 Cal. 2d 863, 869-870.)

9        88.    Defendant's conduct was also malicious, oppressive, and fraudulent, as those terms are defined by Civ. Code, § 3294(c).

      89.    The acts of malice, oppression, and fraud were committed by one or more officers, directors, or managing agents of Defendant. Said persons also authorized and ratified the deceitful nondisclosures by its employees. Plaintiff does not yet know the names of the officers, directors, managing agents, or employees.

13        90.    Plaintiff requests exemplary damages pursuant to Civ. Code, § 3294.

### FOURTH CAUSE OF ACTION
### Intentional interference with contract relations
### (Against PMI)

      91.    Plaintiff realleges and incorporates herein every allegation contained above.

      92.    Defendant's conduct was wrongful in that it intentionally and fraudulently induced Plaintiff to enter into the GBA and continue performing it, by intentionally failing to ensure that Plaintiff knew that the true purpose of GBA was to avoid an import ban and subsequently that it was negotiating to have the import ban removed. The removal of the import ban did in fact cause the termination of the GBA, which was always Defendant's intention.

      93.    Plaintiff believed that the GBA would remain in effect for the long term, perhaps a decade or more, and had no reason to believe that it might be suddenly and abruptly terminated if a patent dispute and import ban, which it knew nothing about, was settled. It incurred the unrecovered costs and unrecovered lost profits claimed herein based on that belief.

      94.    Said termination proximately caused Plaintiff to incur unrecovered costs in the

1  amount of $7,981,103 to implement the GBA and unrecovered lost profits in the amount of at
2  least $10,206,000 (in 2024 dollars). Defendant is liable to Plaintiff therefor.

3  95. Defendant is liable to Plaintiff for tortious intentional interference with the GBA.

4  96. Said tortious intentional interference proximately caused Plaintiff to incur
5  unrecovered costs in the amount of $7,981,103 to implement the GBA and unrecovered lost
6  profits in the amount of at least $10,206,000 (in 2024 dollars). Defendant is liable to Plaintiff
7  therefor.

8  97. Defendant's conduct was willful and wanton because Defendant knew that
9  nondisclosure would cause Plaintiff to suffer substantial losses if the GBA was prematurely
10 terminated as a result of settlement of the patent dispute and removal of the import ban. Therefore, exemplary damages may be awarded. (*Donnelly v. Southern Pacific Co.* (1941) 18 Cal. 2d 863, 869-870.)

11 98. Defendant's conduct was also malicious, oppressive, and fraudulent, as those
12 terms are defined by Civ. Code, § 3294(c).

13 99. The acts of malice, oppression, and fraud were committed by one or more officers,
14 directors, or managing agents of Defendant. Said persons also authorized and ratified the deceitful
15 nondisclosures by its employees. Plaintiff does not yet know the names of the officers, directors,
16 managing agents, or employees.

17 100. Plaintiff requests exemplary damages pursuant to Civ. Code, § 3294.

18 **RESERVATION OF RIGHTS**

19 The causes of action herein are pleaded in the alternative.

20 All rights are reserved. No waivers of any claims are intended by any statement or
21 omission herein.

22 Plaintiff does not waive any rights or claims against Flex. Flex is jointly and severally
23 liable with Defendant for the unrecovered incurred costs and unrecovered lost profits alleged
24 herein. Flex's liability is being adjudicated by arbitration.

25 **DEMAND FOR JURY TRIAL**

26 Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A. Under the First, Second, Third, and Fourth Causes of Action, compensatory damages for incurred costs in the amount of $7,981,103.

B. Under the First, Second, Third, and Fourth Causes of Action, compensatory damages for lost profits in the amount of at least $10,206,000 (in 2024 dollars).

C. Under the First, Second, Third, and Fourth Causes of Action, exemplary damages.

D. Prejudgment interest to the maximum extent permitted by law.

E. All costs of suit.

F. Such other and further relief as this Court may deem just and proper.


Dated: December 9, 2024

                                LAW OFFICES OF STEPHEN L. JOSEPH

                                _____
                                STEPHEN L. JOSEPH, ESQ.
                                Counsel for Plaintiff
                                PLASTIKON INDUSTRIES